IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MILTON B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20-cv-5482 |
| v. ) | |
| ) | Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Milton B. ("Claimant") moves to reverse or remand the final decision of the Commissioner of Social Security ("Commissioner") finding Claimant's disability ended on December 1, 2017. (Dckt. #21). The Commissioner brings a cross-motion for summary judgment seeking to uphold the decision to deny benefits. (Dckt. #27). The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). As explained below, Claimant's motion to remand the decision of the Commissioner, (Dckt. #21), is granted and the Commissioner's motion for summary judgment, (Dckt. #27), is denied.

I.  BACKGROUND

   A.  Procedural History

Claimant, who was forty-two years old as of the date of his hearing, was granted disability benefits with an onset date of April 10, 2004 due to multiple sclerosis ("MS"). (R. 107). On December 4, 2017, during a periodic continuing disability review, the Social Security

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Claimant only by her first name and the first initial of her last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

1

Administration found that Claimant experienced medical improvement and was no longer entitled to benefits. (R. 83-91, 107). Claimant's request for reconsideration was denied and a hearing was held on November 18, 2019 before Administrative Law Judge ("ALJ") Lovert F. Bassett. (R. 47-79). On December 30, 2019, the ALJ issued a decision finding that Claimant's disability ended as of December 1, 2017, and that he had not become disabled again since that date. (R. 24). The Appeals Council denied Claimant's request for review on July 17, 2020, (R. 1-7), leaving the ALJ's decision as the final decision of the Commissioner. This action followed.

### B. The Standard for Proof of Disability Under the Social Security Act

In order to qualify for disability benefits, a claimant must demonstrate that he is disabled. An individual does so by showing that he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118 at *2 (N.D.Ind.

Oct. 22, 2019). If a claimant establishes that he has one or more physical or mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, he is considered to be disabled, and the analysis concludes. If the listing is not met, the analysis proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), which defines his exertional and non-exertional capacity to work despite the limitations imposed by his impairments. The SSA then determines at step four whether the claimant is able to engage in any of his past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, he is not disabled. *Id*. If the claimant cannot undertake his past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of his RFC, age, education, and work experience. An individual is not disabled if he can do work that is available under this standard. 20 C.F.R. §404.1520(a)(4)(v).

Once a claimant has been deemed disabled, there is a statutory requirement that the claimant's "continued entitlement" to his disability benefits "be reviewed periodically." 20 C.F.R. §404.1594(a). During such reviews, the Commissioner must determine whether there has been "medical improvement" in the claimant's impairment. Medical improvement is defined by the SSA as "any decrease in the medical severity of [the] impairment(s) which was present at the

3

time of the most recent . . . decision [in the claimant's favor]." 20 C.F.R. §404.1594(b)(1). The most recent decision in Claimant's favor is the comparison point decision ("CPD").

SSA regulations prescribe an eight-part test for determining whether medical improvement has occurred. 20 C.F.R. §404.1594(f). The SSA must consider: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment listed in Appendix 1; (3) if not, whether there has been medical improvement (as defined above); (4) if there has been medical improvement, is it related to the claimant's ability to do work (i.e., has it caused an increase in his RFC); (5) if there has not been medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exceptions to medical improvement apply; (6) if the medical improvement is related to the claimant's ability to do work or if certain exceptions apply, are his current impairments in combination severe; (7) if the claimant's impairment is severe, does he have the RFC to do past relevant work; and (8) if the claimant cannot do past relevant work, does his RFC enable him to do other work. *Id*.

### C. The Evidence Presented to the ALJ

Claimant seeks an extension of his disability benefits due to issues arising from multiple sclerosis.[2] (R. 80-81, 85). Because the Court's decision relates only to the ALJ's assessment of Claimant's non-physical limitations, it will limit its discussion of the evidence accordingly.

#### 1. Treating Physicians

On December 30, 2017, Claimant presented to George Czajkowski, M.D., his primary care provider, who recorded that Claimant was first diagnosed with MS at age nineteen. (R. 521-

---

[2] Multiple Sclerosis is a "common demyelinating disorder of the central nervous system, causing patches of sclerosis (plaques) in the brain and spinal cord . . . typical symptoms include visual loss, diplopia, nystagmus, dysarthria, weakness, paresthesias, bladder abnormalities, and mood alterations." Stedmans Medical Dictionary, *Multiple Sclerosis (MS)*, STEDMANS 802480 (2014).

24). Claimant's symptoms included fatigue, memory loss, and adjustment insomnia. (*Id*.). Dr. Czajkowski observed that Claimant's mood was slightly depressed and that he had a normal attention span but decreased short-term memory. (R. 522). Claimant scored twenty-four out of a possible thirty on the St. Louis University mental status examination during this visit, which showed a mild neurocognitive disorder and a memory deficit. (*Id*.). Dr. Czajkowski referred Claimant for additional psychological examinations to assess his depression and cognitive functioning. (R. 523).

Claimant next presented for a neurology follow-up visit with Timothy Mikesell, D.O., on January 9, 2018. (R. 514-19). Claimant told Dr. Mikesell that he was severely depressed and could not sleep for two weeks despite taking six milligrams of melatonin before bed. (R. 514). Upon examination, Dr. Mikesell found Claimant's orientation, memory, attention, language, and fund of knowledge were normal. (R. 518). Dr. Mikesell prescribed Sertraline to treat Claimant's depression.[3] (R. 518). On January 23, 2018, Claimant again presented to Dr. Czajkowski, who documented Claimant's continued Sertraline use. (R. 563).

On February 22, 2018, Claimant met with clinical psychologist Ronald Ganellen, Ph.D., for a neuropsychological examination to assist in planning his treatment. (R. 596). Claimant advised Dr. Ganellen of his short-term memory issues, such as forgetting; (1) that he was cooking food causing it to burn; (2) conversations with family immediately after they occurred; and (3) instructions from his supervisor at work. (R. 597). Dr. Ganellen documented symptoms of depression and anxiety, specifically that Claimant worries "a good deal of the time, is troubled

---

[3] Sertraline is an anti-depressant medication "used to treat depression" that "belongs to a group of medicines known as selective serotonin reuptake inhibitors" and "works by increasing the activity of a chemical called serotonin in the brain." *Sertraline (Oral Route)*, MAYO CLINIC, https://www.mayoclinic.org/drugs-supplements/sertraline-oral-route/description/drg-20065940 (last visited May 17, 2023).

by a sense of failure, and often feels lonely . . . tense, nervous, and apprehensive." (*Id*.). Claimant told Dr. Ganellen his depression began when he was diagnosed with MS at nineteen. (R. 597-98). Claimant performed a number of neurocognitive tests for Dr. Ganellen, who concluded that Claimant's decline in non-verbal intellectual and reasoning abilities and impaired memory "may reflect cognitive and memory dysfunction secondary to MS . . . [or] to emotional factors." (R. 600).

On April 11, 2018, Claimant complained to Dr. Mikesell that he recently fell, still had issues sleeping, and that his fatigue had worsened. (R. 632). On July 23, 2018, Dr. Mikesell confirmed that Claimant's Sertraline prescription recently doubled to try to combat his depression. (R. 638). Claimant reported six more falls during doctor visits on July 23, 2018, December 31, 2018, and April 24, 2019, August 21, 2019, and October 2, 2019. (R. 632, 1020, 1111, 1117, 1135-39).

Claimant participated in a mental health assessment with licensed clinical social workers Benita Lackajs and Haley Hansen on July 24, 2018. (R. 1078, 1087-88). They recorded Claimant's memory was within normal limits with short-term memory deficits. (R. 1083). Claimant told the LCSWs that he has experienced moderate depression for years. (*Id*.). Claimant was diagnosed with "[m]ajor depressive disorder, [r]ecurrent episode, [m]ild," but appeared motivated to work on his feelings of depression. (R. 1086). On April 24, 2019, Dr. Mikesell opined that Claimant's Sertraline prescription helped control his depression. (R. 1117).

Dr. Czajkowski completed a physical residual function capacity statement for Claimant on October 3, 2019. (R. 1048-51). The completed form contained sections related to Claimant's mental impairments. (*Id*.). Dr. Czajkowski certified he had treated Claimant since June 4, 2014. (R. 1048). In his opinion, Claimant's fatigue and depression were among his most significant

6

clinical findings. (*Id*.). Dr. Czajkowski concluded that Claimant's stress was severe enough to frequently interfere with his attention and concentration needed to perform simple work tasks and that Claimant's limitations would cause him to: (1) be "off task" for an estimated thirty percent of a typical workday; (2) miss five or more days of work per month; and (3) be unable to obtain and retain full time employment. (R. 1048, 1051).

### 2. State Agency Physicians

Claimant underwent a consultative internal medical examination with Fauzia Rana, M.D., on November 10, 2017. (R. 502). Dr. Rana indicated Claimant was diagnosed with MS twenty years prior to their meeting. (*Id*.). Dr. Rana found that Claimant: (1) was alert, "oriented times three," and cooperative; (2) made good eye contact; (3) had intact memory and judgment; and (4) that he could handle his finances. (R. 505). Dr. Rana assessed MS and possible degenerative arthritis. (*Id*.).

On January 18, 2018, Linda Lanier, Ph.D, completed a psychiatric review technique form based upon Claimant's medical records. (R. 573-87). Dr. Lanier documented Claimant's complaints of mild memory problems related to MS constituted a medically determinable impairment but concluded his disorders were not severe. (R. 573-74). She determined that Claimant was able to concentrate and that his memory was intact but that he exhibited mild limitations in his ability to understand, remember, or apply information as well as to concentrate, persist, or maintain pace. (R. 585, 587).

### 3. Hearing Testimony

Claimant appeared with counsel at the November 18, 2019 hearing before the ALJ. (R. 49). Claimant testified that he worked part-time at a video store in Des Plaines, Illinois since 2001. (R. 53-54). The video store is far from his home, so Claimant took a train and a bus to get

to work but only worked once per week at the time of the hearing due to his conditions. (R. 56, 61). Claimant said he spent his free time with family, who support him emotionally and help ease his loneliness and boredom. (R. 57-58).

Alberto Munoz, a medical expert ("ME"), also testified at Claimant's hearing. (R. 65). Mr. Munoz testified that he reviewed Claimant's medical records and concluded that his medically determinable impairments were MS and cervical spine disc disease. (R. 65-66). Dr. Munoz stated that Claimant's MS symptoms improved but that "[w]ith this condition, he cannot be better." (R. 69). Nevertheless, Dr. Munoz opined that Claimant could perform sedentary work. (R. 72). Next, Julie Rose, a vocational expert ("VE"), testified that no sedentary jobs would be available to a person who would be absent from work three or more days per month or off task thirty percent of the workday due to medical symptoms. (R. 77).

### D. The ALJ's Decision

The ALJ first identified the CPD as April 10, 2004 before undertaking the eight-step continuing disability review analysis described above. (R. 26). He determined that Claimant had not engaged in substantial gainful activity through the date of his decision, January 3, 2020. (R. 26, 39). Next, he found that, as of December 1, 2017, Claimant's impairment or combination of impairments did not meet or medically equal a listed impairment, *i.e.*, listing 11.09 ("multiple sclerosis"). (R. 26).

At step three, the ALJ concluded that Claimant's MS was medically improved as of December 1, 2017, because Claimant's MS symptoms were not "as severe" as his prior history that "included paraplegia of the lower extremities and upper extremity numbness." (R. 33). Nonetheless, the ALJ classified Claimant's MS as a severe impairment. (*Id.*).

Next, the ALJ found that Claimant's medical improvement was related to the ability to work because, as of December 1, 2017, Claimant "no longer had an impairment or combination of impairments that met or medically equaled the same listing(s) that was met at the time of the CPD." (*Id*.). As part of this analysis, the ALJ considered Drs. Rana and Lanier's opinions of Claimant's mental health status. (R. 30). In particular, he noted that Dr. Rana concluded that Claimant "d[id] not have a mental health condition," and that – after her review of medical records indicating Claimant suffered from depression and "decreased short-term memory," – Dr. Lanier concluded Claimant "had no problems reading, understanding, concentrating, talking or answering," contradicting his claimed depression. (*Id*.). The ALJ explained that "Dr. Lanier provided such a vividly convincing rationale for her findings about [Claimant's] mental health status that it became a powerful evidentiary influence on the [ALJ]." (*Id*.).

Following this review, the ALJ explained that Claimant suffered from no severe mental impairment or combination of impairments upon consideration of the four broad functional areas constituting what are known as the "paragraph B" criteria. (*Id*.). Of those four criteria, the ALJ found that Claimant had a mild limitation in his ability to understand, remember, or apply information and in his ability to concentrate, persist, or maintain pace but that he had no limitation in his ability to interact with others or to adapt or manage himself. (R. 30-31).

The ALJ next determined that Claimant had the RFC to perform "the full range of sedentary work as defined in 20 C.F.R. §404.1567(a)."[4] (*Id*.). He justified his conclusion by

---

[4] Section 404.1567(a) provides:

> Sedentary work involves lifting no more than [ten] pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

9

stating that "[t]here is absolutely nothing that is clinically detected that would suggest that [Claimant] is incapable of fulfilling the very modest physical and mental demands of sedentary unskilled work." (R. 36). The ALJ gave no weight to Dr. Czajkowski's opinion of Claimant's RFC, which he characterized as "so divorced from the reality of the objective findings . . . that it merits zero persuasive value." (R. 37). Instead, the ALJ relied upon medical expert Dr. Munoz's "supremely valuable and persuasive" testimony from the hearing because Dr. Munoz "had the opportunity to listen to the claimant's testimony, as well as observe him," in the context of his full review of the record, experience in providing expert testimony for disability hearings, and familiarity with the regulations. (*Id*.).

The ALJ concluded that Claimant had no past relevant work, that job skill transferability was not an issue, and that he has been able to perform a significant number of jobs in the national economy. (*Id*.) (citing 20 C.F.R. §§404.1560(c), 404.1566). He therefore found Claimant's disability ended on December 1, 2017. (R. 39).

## II. STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free

from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court determines whether the ALJ articulated an "accurate and logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

### III. ANALYSIS

#### A. The ALJ Erred by Failing to Account for the Limitations Resulting From Claimant's Mental Impairments When He Determined Claimant's RFC.

As outlined above, the ALJ concluded that Claimant's mental impairment or impairments were non-severe but nonetheless caused mild limitations in his ability to understand, remember, or apply information, as well as concentrate, persist, or maintain pace. (R. 30-31). Although the ALJ acknowledged that his step two analysis was "not a residual functional capacity assessment," and that the "mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment," (R. 31), the ALJ did not account for these limitations in either his questions to the VE and ME or in the RFC itself. (R. 33, 65-78). In his explanation of the RFC, the ALJ summarized parts of Claimant's medical

11

history, including his struggles with and treatment of depression, but did not explain his decision to exclude from the RFC the limitations that he found that Claimant's mental impairments created. (R. 34-37).

Claimant now urges this Court to reverse and remand the ALJ's decision to deny benefits, arguing, among other things, that the ALJ erred in his failure to properly consider the limitations arising from his mental impairments in the RFC finding. Because this argument has merit, the Court finds that a remand to the SSA is warranted and it will not address Claimant's remaining arguments. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations in concentration, persistence, and pace, we do not address DeCamp's other arguments."). The Court's decision in this regard is not a comment on the merits of Claimant's other arguments and he is free to re-assert them on remand.

"The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). The task of assessing a claimant's RFC is reserved to the Commissioner. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "When determining a claimant's RFC, the ALJ must consider the combination of *all* limitations on the ability to work, including those that do not individually rise to the level of a severe impairment, . . . [and] [a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted; emphasis added); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). That "a non-severe impairment may not significantly limit a claimant's ability to work when viewed in isolation" does not mean that it cannot "'be critical to the outcome of a claim' when viewed in combination with other

12

limitations." *Muzzarelli v. Astrue*, No. 10 C 7510, 2011 WL 5873793 at *23 (N.D.Ill. Nov. 18, 2011), *quoting* SSR 96-8p.

Consequently, it is well-settled that the ALJ must incorporate all limitations arising from a claimant's mental impairments into his RFC, even if those mental impairments are non-severe and the limitations that they impose on the claimant's capabilities are minor. *See, e.g.*, *DeCamp*, 916 F.3d at 675-76; *Yurt v. Colvin*, 758 F.3d 850, 857-59 (7th Cir. 2014); *John M. v. Kijakazi*, No. 19 cv 1595, 2022 WL 220384, *9-10 (N.D.Ill. Jan. 25, 2022); *Cheryl C. v. Berryhill*, No. 18 C 1443, 2019 WL 339514 at *3-4 (N.D.Ill. Jan. 28, 2019); *President v. Berryhill*, No. 17 C 4910, 2018 WL 4282053 at *3-4 (N.D.Ill. Sept. 7, 2018); *Hovi v. Colvin*, No. 12-C-169, 2013 WL 3989232 at *16 (W.D.Wis. Aug. 2, 2013) ("Courts in this circuit have consistently held that an ALJ's unexplained failure to include even mild limitations in concentration, persistence, and pace in the RFC warrants remand.").

Moreover, "[i]f the ALJ intended to incorporate restrictions caused by Claimant's mild mental limitations into the RFC, [he] was obligated to explain how [he] did so." *Viviana R. v. Kijakazi*, No. 19-cv-07419, 2022 WL 3354840 at *5 (N.D.Ill. Aug. 12, 2022), *quoting Muzzarelli*, 2011 WL 5873793 at *23; *Anthony W.*, 2022 WL 1062334 at *3 ("While the Court generally reads the ALJ's decision as a whole, the ALJ here explicitly stated that the step two analysis did not constitute a mental RFC assessment. . . . [T]he Court will not overreach and ignore the ALJ's own words in an effort to read the opinion as a whole.").

Conversely, if the ALJ did not believe Claimant's mental impairments warranted non-exertional limitations in the RFC, he was obligated to explain why. *Muzzarelli*, 2011 WL 5873793 at *23; *Joanne Y. v. Kijakazi*, No. 21-cv-1050, 2023 WL 3389367 at *6 (N.D.Ill. May 11, 2023); *Thomas G. v. Kijakazi*, No. 20-cv-5860, 2022 WL 4234967 at *5 (N.D.Ill. Sept. 14,

13

2022); *Viviana R.*, 2022 WL 3354840 at *5. An ALJ's failure to provide such an explanation leaves courts unable to follow the ALJ's reasoning and, therefore, requires remand so that the ALJ can provide clarification. *Muzzarelli*, 2011 WL 5873793 at *23-24; *Viviana R.*, 2022 WL 3354840 at *5 (collecting cases).

Here, the Commissioner argues that the ALJ's RFC assessment can be salvaged because he discussed Claimant's "diagnosis of mild depression in summer 2018, which was controlled with medication" and "took note of [Claimant's] reports of memory issues." (Dckt. #28 at 12). Still, the Commissioner does not dispute that the ALJ omitted non-exertional limitations in the RFC, (Dckt. #28 at 11-14), and such an omission warrants remand.

The ALJ did not honor his promise at step two to provide a "more detailed assessment of the mental RFC used at steps four and five." (R. 31, 33-37). To the contrary, the ALJ failed to mention his finding that Claimant had mild limitations in his ability to understand, remember, or apply information and to concentrate, persist, or maintain pace in his discussion of his RFC assessment. (R. 33-37). Nor did the ALJ provide any explanation as to why he failed to include any non-exertional limitations in the RFC to address Claimant's mild mental limitations.

The ALJ's failure to address the mild limitations created by Claimant's mental impairments is prejudicial because the ALJ's determination of non-disability was based on the finding that Claimant had the ability to perform the full range of sedentary work. (R. 31). Courts have repeatedly recognized that even "mild limitations in social functioning or concentration, persistence, or pace may preclude the ability to perform . . . skilled and semi-skilled work." *Cheryl C.*, 2019 WL 339514, at *3 (citing cases); *Teri D. v. Kijakazi*, No. 20 C 4999, 2023 WL 2789326, at *4 (N.D.Ill. Apr. 5, 2023); *Joanne Y.*, 2023 WL 3389367, at *5-6; *Hovi*, 2013 WL 3989232, at *16. Furthermore, Claimant's difficulties with memory and

14

concentration might impact or preclude his ability to perform even the unskilled sedentary work that the ALJ found that Claimant was fully able to perform. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (citing *Craft*, 539 F.3d at 677-78).

For these reasons, the ALJ's decision must be reversed and remanded. On remand, the ALJ must either incorporate non-exertional restrictions into the RFC that account for Claimant's mental impairments' impact in the two broad areas of mental functioning or explain why such limitations are unnecessary.

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse or remand the Commissioner's final decision, (Dckt. #21), is granted and the Commissioner's motion for summary judgment, (Dckt. #27), is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**Date: June 22, 2023**

**Jeffrey I. Cummings**
**United States Magistrate Judge**